IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE: WINDHAVEN TOP INSURANCE   :    Chapter 7
HOLDINGS, LLC, *et al.*,               :    Bankr. No. 20-10524 (JTD)
                                 :    (Jointly Administered)
           Debtors.         :

---

RISK & REGULATORY CONSULTING,   :
LLC, in its capacity as SPECIAL DEPUTY  :
RECEIVER OF WINDHAVEN NATIONAL:
INSURANCE COMPANY,            :
                                 :
          Appellant,        :
    v.                         :    Civ. No. 21-1534-CFC
                                 :
ATALAYA CAPITAL MANAGEMENT,   :
*et al.*,                           :
                                 :
          Appellees.        :

---

Gregory L. Arbogast, Keith M. Lusby, GEBHARDT & SMITH LLP, Wilmington, Delaware.

> *Counsel for Appellant, Risk & Regulatory Consulting, LLC, in its capacity as Special Deputy receiver of Windhaven National Insurance Company.*

Mark E. Felger, Barry M. Klayman, Gregory F. Fischer, COZEN O'CONNOR, Wilmington, Delaware.

> *Counsel for Appellee, Jeffrey L. Burtch, as Chapter 7 Trustee.*

## **OPINION**

March 27, 2023
Wilmington, Delaware

_____

CONNOLLY, UNITED STATES DISTRICT JUDGE

## I.     INTRODUCTION

This appeal arises from the chapter 7 cases[1] of Windhaven Top Insurance

Holdings, LLC and certain affiliates (together, "Debtors").  Appellant Risk &

Regulatory Consulting, LLC ("RRC") is special deputy receiver of non-debtor

Windhaven National Insurance Company ("WNIC"), a domestic insurer subject to

Texas liquidation proceedings pending in the District Court of Travis County,

Texas ("Texas Court").  Debtors rendered various administrative services to WNIC

and other insurers.  When the parties became financially distressed in 2019,

Debtors filed voluntary petitions for relief under the Bankruptcy Code.  Because

WNIC is a domestic insurer, it was not eligible for relief under the Bankruptcy

Code.  *See* 11 U.S.C. § 109(b)(2).  Instead, WNIC was placed into receivership and

liquidation pursuant to the Texas Insurer Receivership Act, codified at Texas

Insurance Code §§ 443.001, *et seq*. ("Texas Insurance Code").

_____

[1] The docket of the chapter 7 cases, captioned *In re Windhaven Top Insurance Holdings, LLC*, No. 20-10524 (JTD) (Bankr. D. Del.), is cited herein as B.D.I. __."
The appendix (D.I. 10-1) filed in support of appellant's opening brief is cited herein as "A__."

The underlying dispute between RRC and the trustee appointed in the Debtors' chapter 7 cases ("Trustee")[2] concerns the ownership of funds in the possession of the Debtors at the time the bankruptcy cases were filed.  RRC filed a motion in the Bankruptcy Court seeking relief from the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), and authority to commence litigation in the Texas Court to settle the dispute regarding ownership of the funds and enforce RRC's asserted rights under the Texas Insurance Code.  The stay relief motion relied on the reverse preemption doctrine under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015,[3] which generally provides that if a specific state law promulgated "for the purpose of regulating the business of insurance" conflicts with a generally applicable federal law, the state law controls.  *See* 15 U.S.C. § 1012(b).  RRC argued that the dispute over the ownership of funds triggered reverse preemption under the McCarran-Ferguson Act because various Texas

---

[2] By Stipulation filed November 21, 2022 (D.I. 13), appellees Atalaya Capital Management LP, Atalaya Special Opportunities Fund VII LP, and Midtown Madison Management LLC have withdrawn from the appeal.

[3] "The McCarran-Ferguson Act has been interpreted as overturning traditional federal rules of preemption and allowing state insurance statutes to 'reverse preempt' federal statutes that affect state regulation of the insurance industry." *In re First Assured Warranty Corp.*, 383 B.R. 502, 531 (Bankr. D. Colo. 2008) (citing *Genord v. Blue Cross & Blue Shield of Michigan (Genord)*, 440 F.3d 802, 805 (6th Cir. 2006), *cert denied*, 549 U.S. 1030 (2006) (discussing McCarran–Ferguson Act and "reverse preemption"); *Ruthardt v. U.S.*, 303 F.3d 375, 380 (1st Cir. 2002) (describing application of the McCarran–Ferguson Act as " 'reverse preemption'— of federal law by state law—by Congress' consent")).

Insurance Code provisions conflicted with aspects of the Bankruptcy Code, and where resolution of a dispute between two parties implicates reverse preemption under the McCarran-Ferguson Act, "cause" exists under § 362(d)(1) of the Bankruptcy Code to modify the automatic stay to permit the disputes to be adjudicated in the applicable state law forum.

In its Order (D.I. 1-1) and accompanying Opinion, *In re Windhaven Top Insurance Holdings, LLC*, 636 B.R. 596 (Bankr. D. Del. 2021), each issued on October 15, 2021, the Bankruptcy Court determined that the parties' dispute did not implicate the McCarran-Ferguson Act and denied the Lift Stay Motion. For the reasons set forth herein, the Court affirms the Order.

## II.    BACKGROUND

### A.    The Parties and the MGA Agreements

WNIC was a domestic property and casualty insurance company domiciled in the state of Texas and mainly wrote non-standard automobile insurance policies. WNIC is a wholly-owned subsidiary of Debtor, Windhaven National Holding Company. (A016). Windhaven National Holding Company also owned a number of other affiliated entities, whose primary purpose was to render administrative services to WNIC and other insurers. (A006). These affiliated entities are all Debtors in the jointly administered bankruptcy proceedings.

Debtors, Windhaven Insurance Services, LLC and Windhaven Select, LLC, served as managing general agents or "MGAs." (A183). The MGAs were responsible for performing various administrative responsibilities for WNIC related to the underwriting of policies, including collecting premiums. (A183-84).

The rights and obligations of WNIC and the MGAs are governed by the terms and conditions of two separate Managing General Agency Agreements or "MGA Agreements." (A183). The MGA Agreements are subject to regulation by the state of Texas under the Texas Insurance Code and the Texas Administrative Code. (A008-18). Among the terms that agreements between insurers and MGAs must include is a provision that "all funds and invested assets of the insurer are the exclusive property of the insurer, held for the benefit of the insurer and are subject to the control of the insurer." 28 Tex. Admin. Code § 7.204(a)(2)(D)(viii). Further, under applicable law, the MGAs "hold[] money on behalf of an insured or insurer in a fiduciary capacity . . . ." Tex. Ins. Code § 4053.106. The MGA Agreements contain the above statutorily required terms.

The following terms of the MGA Agreements provide that the MGAs hold premiums collected on behalf of WNIC in trust and in a fiduciary capacity for the benefit of WNIC:

> Section 7.1 – "The Managing General Agent shall accept and hold all premiums collected and other funds relating to the business written under this Agreement in a fiduciary capacity."

4

> Section 7.4 – "The Managing General Agent shall not commingle any premium or escrow funds with its personal accounts or other agency funds or funds held by the Managing General Agent in any other capacity."

> Section 7.6 – "The Managing General Agent shall act as trustee for the Company on the Premium Escrow Account."

(A077).  In consideration for rendering these administrative services, the MGAs received a commission they retained from the collected premiums.  (A070).  Significantly, the MGA Agreements are clear that "[t]he privilege of retaining commissions shall not be construed as changing the fiduciary capacity [of collected premiums]."  (A077 at § 7.1).

The statutory and contractual provisions requiring the MGAs to hold WNIC's funds in a fiduciary capacity become significant when an insurer is placed into liquidation.  (A023).  Whereas the Texas Insurance Code generally permits a person to setoff debits and credits against an insurer in liquidation, it forbids setoff if the funds are held in a fiduciary capacity.  (A026-27).  Specifically, the Texas Insurance Code provides that, "[a] setoff may not be allowed in favor of any person if . . . the obligation of the person is as a trustee or a fiduciary . . . ."  Tex. Ins. Code § 443.209(b)(3)(A).

### B.     The Liquidation and Bankruptcy Filings

In 2019, WNIC and the Debtors became financially distressed.  Because

WNIC is a domestic insurer, it was not eligible for relief under the Bankruptcy

Code.  11 U.S.C. § 109(b)(2).  Instead, WNIC was placed into receivership and

liquidation under the Texas Insurer Receivership Act.  (A006).  On or about

February 21, 2020, the State of Texas filed its Original Petition, Application for

Order Appointing Liquidator and Request for Injunctive Relief with the Texas

Court at the request of the Texas Commissioner of Insurance.  (A019).  On

February 27, 2020, the Texas Court entered an Agreed Temporary Restraining

Order ("TRO").  (*Id.*)  The TRO expressly enjoined and restrained dozens of

specifically named persons and entities (including the MGAs) from:

> *[m]aking any claim, charge or offset*, or commencing
> []or prosecuting any action, appeal, or arbitration,
> including administrative proceedings, or obtaining any
> preference, judgment, attachment, garnishment, or other
> lien, or making any levy against Defendant or
> Defendant's Property, except as permitted by Tex. Ins.
> Code Chapter 443.

(A095) (emphasis added).  Upon commencement of the receivership proceeding,

the Texas Insurer Receivership Act imposed an automatic stay of actions against

WNIC, in effect for the duration of the receivership proceedings, and a stay of

actions against WNIC's property is in effect for as long as the property belongs to

the receivership estate.  Tex. Ins. Code § 443.008(c), (f).

On March 5, 2020, the Texas Court entered its Order Appointing Liquidator, Permanent Injunction and Notice of Automatic Stay (the "Liquidation Order"), whereby it appointed the Texas Commissioner of Insurance ("Liquidator") as Liquidator of WNIC's property for the benefit of policyholders and creditors. (A019).  The Liquidator thereafter appointed RRC as the Special Deputy Receiver. (A006).  Under Texas Insurance Code § 443.154(a), RRC is authorized to exercise all of the Liquidator's powers with respect to the WNIC receivership, subject only to limitations imposed by the Liquidator.  Tex. Ins. Code § 443.154(a).

In connection with the Liquidation Order, the Texas Court issued a permanent injunction pursuant to Texas Insurance Code § 443.008(a), enjoining, among other things, all claimants or creditors of WNIC from asserting claims or causes of action against WNIC except as permitted by the Texas Insurance Code. (A019).

The Liquidation Order vests the Liquidator "with title to all of Defendant's property as defined in Tex. Ins. Code § 443.004(a)(20)."  (A100).  It further directs and authorizes the Liquidator to "take possession and control of [WNIC's] Property, wherever located" pursuant to Tex. Ins. Code § 443.151(a).  (A100-01). Accordingly, what comprises WNIC's receivership estate broadly includes:

> property of any kind or nature, . . . including but not limited to money, funds, cash, . . . account deposits, statutory deposits, special deposits, . . . funds held in shared escrow or trust accounts, . . . whether owned

> individually, jointly, or severally, wherever located, and
> all rights, claims or causes of action belonging to
> Defendant, whether asserted or not . . . (collectively,
> Defendant's Property). The Liquidator's title shall extend
> to Defendant's Property regardless of the name in which
> such items are held, or where such items are located.

(*Id.*)   The Texas Court further ordered that the automatic stay take effect pursuant

to Tex. Ins. Code § 443.008 with respect to, among other things, actions against

WNIC or its property effective on the commencement of the proceeding.  (*Id.*)

The Court also issued a permanent injunction under Tex. Ins. Code § 443.008 to

"carry out the provisions of Tex. Ins. Code Chapter 443, and prevent irreparable

injury, loss and damage to the general public and [WNIC]'s creditors." (A102).

The injunction enjoins all claimants from "asserting claims or causes of action

against [WNIC], except as permitted by the Insurer Receivership Act." (*Id.*)

Between March 5, 2020 and April 3, 2020, each of the Debtors filed

voluntary petitions for relief under the Bankruptcy Code.  (A182).  These cases

have been jointly administered in the Bankruptcy Court. (*Id*).

## C.     The Disputed Funds

Various disputes between RRC and the Trustee arose concerning the

following funds (collectively, the "Disputed Funds"): (1) approximately

$3,000,000 currently held in Premium Escrow Accounts nominally titled in the

names of the MGAs, which they hold as trustees and fiduciaries, for the benefit of

WNIC, (2) approximately $57,200 held in a refund account which Windhaven

8

Services, LLC holds as a fiduciary for the benefit of certain of WNIC's policy

holders, (3) an additional $338,923.27 belonging to WNIC that appears to have

been inadvertently deposited into a premium escrow account of another insurance

company, which funds are similarly held by the debtors as trustees and fiduciaries

for the benefit of WNIC, and (4) more than $3,000,000 of payments by consumers

for insurance policies issued by WNIC, held by a credit card processor in the name

of one of the Debtors, in a fiduciary capacity per the MGA Agreements.

RRC asserts that the Disputed Funds are not property of the bankruptcy

estates because they are held by the Debtors in a fiduciary capacity for the benefit

of WNIC.  The Trustee has commenced an adversary proceeding seeking a

determination that the Disputed Funds (as well as certain tax refunds not

referenced in the Lift Stay Motion) are property of the bankruptcy estates.  *Burtch

v. Risk & Regulatory Consulting, LLC*, Adv. No. 22-50232 (JTD) (Bankr. D. Del.).

**D.    Lift Stay Motion**

On September 11, 2020, RRC filed its *Motion for Relief from the Automatic

Stay to Litigate Certain Disputes in the District Court of Travis County, Texas*

(A004-A116) (the "Lift Stay Motion").  Through the Lift Stay Motion, RRC

sought relief from the automatic stay to commence litigation in the Texas Court to

determine ownership of Disputed Funds and enforce its asserted rights under the

Texas Insurance Code.  RRC asserted that the Bankruptcy Code is reverse

preempted by the Texas Insurance Code and, as such, cause existed to modify the automatic stay. The Trustee filed an objection (A117-A135), and Atalaya Special Opportunities Fund VII LP filed a joinder to the Trustee's objection (A136-138). RRC filed its reply on October 13, 2020 (A139-A144), and the Bankruptcy Court held oral argument on October 14, 2020 (A152:21-A179:4), ultimately taking the matter under advisement (A178:14-15).

### E.    The Opinion and Order

On October 15, 2021, the Bankruptcy Court issued the Opinion and Order denying the Lift Stay Motion. The Bankruptcy Court concluded that the dispute is, "at its core, ... a contractual dispute between the parties...," and that the Bankruptcy Court had exclusive jurisdiction to determine the ownership of the property held by the Debtors at the time of the filing of the bankruptcy petitions. *In re Windhaven,* 636 B.R. at 603. The Bankruptcy Court further concluded that such a determination, based on its interpretation of the applicable MGA Agreements, was not reverse preempted by the McCarran-Ferguson Act because such a determination of property ownership does not invalidate, impair, or supersede the Texas Insurance Code. *Id.*

On October 27, 2021, RRC filed a timely notice of appeal. (A204). The appeal is fully briefed. (D.I. 10, 11, 12). No party requested oral argument.

10

## III.   JURISDICTION AND STANDARD OF REVIEW

The Order denying RRC's Lift Stay Motion is final, and this Court has

jurisdiction over the appeal pursuant to 28 U.S.C. § 158.  The sole issue on appeal

is whether the Bankruptcy Court erred by concluding that the McCarran-Ferguson

Act was not implicated by the disputes between the parties.  (D.I. 10 at 4).

Whether a state regulatory scheme is invalidated, impaired, or superseded by a

federal law is a question of law that is reviewed *de novo*.  *Weiss v. First Unum Life

Ins. Co.*, 482 F.3d 254, 263 (3d Cir. 2007) (citing *Humana Inc. v. Forsyth*, 525

U.S. 299, 311-14 (1999)).

## IV.   PARTIES' CONTENTIONS

RRC argues that the Bankruptcy Court mischaracterized the dispute as

merely requiring a determination as to what constitutes property of the estate,

which did implicate the Texas Insurance Code.  (D.I. 10 at 20-23 & 31-34).

According to RRC, the Bankruptcy Court failed to recognize "the myriad of Texas

Insurance Code statutes regulating the business of insurance which governed the

disputes between the parties."  (*Id.* at 24).  Specifically, RRC argues that the

Bankruptcy Court ignored the Texas Insurance Code's anti-setoff statute and

priority scheme (*id.* at 24-26 & 37-38), which, RRC asserts, is central to the

parties' dispute, as well as jurisdictional provisions intended to foreclose litigation

over receivership property in venues other than the Texas Court (*id.* at 27-30).

The Trustee maintains that the Bankruptcy Court correctly decided that the McCarran-Ferguson Act does not operate to divest the federal court's exclusive jurisdiction under 28 U.S.C. § 1334(e) to determine what is and is not property of the bankruptcy estates. (D.I. 11 at 8). The Trustee argues that RRC has failed to state grounds for reverse preemption under the McCarran-Ferguson Act because there is no inconsistency between the Bankruptcy Court's jurisdiction over property of the bankruptcy estate under the Bankruptcy Code and the Texas Court's jurisdiction over property of the receivership estate under the Texas Insurance Code. (*Id.* at 9-17). The Trustee further asserts that the parties' dispute does not implicate the Texas Insurance Code's limitations on rights of setoff or its priority scheme. (*Id.* at 17-20). While RRC cites a handful of out-of-district decisions holding that a bankruptcy court's determination of certain property disputes would conflict with state insurance law, the Trustee asserts that the Bankruptcy Court's decision here falls in line with decisions from this district and others holding that the Bankruptcy Court's "exclusive jurisdiction over determinations related to property of the estate does not support reverse-preemption," and the fact that "a federal action may have a financial impact on the assets of the insolvent insurer's estate does not necessarily indicate a state's liquidation proceeding is 'impaired.'" (*See id.* at 14 (quoting *In re Patriot Nat'l,*

*Inc.*, 623 B.R. 696, 709-10 (D. Del. 2020); and *In re First Assured Warranty*

*Corp.*, 383 B.R. 502, 541 n.38 (Bankr. D. Colo. 2008)).

## V.    ANALYSIS

### A.    The McCarran-Ferguson Act

The Supremacy Clause of the United States Constitution provides that, in

general, federal law preempts any conflicting state law.  The McCarran-Ferguson

Act creates an exception to the general rule of federal supremacy with respect to

laws enacted "for the purpose of regulating the business of insurance."  It states:

> (a)  State regulation. The business of insurance, and
> every person engaged therein, shall be subject to the laws
> of the several States which relate to the regulation or
> taxation of such business.
>
> (b)  Federal regulation. No Act of Congress shall be
> construed to invalidate, impair, or supersede any law
> enacted by any State for the purpose of regulating the
> business of insurance, or which imposes a fee or tax upon
> such business, unless such Act specifically relates to the
> business of insurance....

15 U.S.C. § 1012.  The McCarran-Ferguson Act thus precludes application of a

federal statute in face of state law "enacted . . . for the purpose of regulating the

business of insurance," if the federal measure does not "specifically relat[e] to the

business of insurance," and would "invalidate, impair, or supersede" the state's

law.  *Department of Treasury v. Fabe*, 508 U.S. 491, 501 (1993).

The parties did not dispute that the relevant Texas statutes were "enacted for the purpose of regulating the business of insurance," or that the Bankruptcy Code does not specifically relate to the business of insurance. The sole issue before the Bankruptcy Court was therefore whether exercise of its exclusive jurisdiction to determine what is and is not property of the Debtors' estates would "invalidate, impair, or supersede" any Texas law that related to the WNIC liquidation.

The Supreme Court defined each of these terms in its *Humana* decision. "Invalidate" ordinarily means "to render ineffective, generally without providing a replacement rule or law." *Humana*, 525 U.S. at 307. "Supersede" ordinarily means "to displace (and thus render ineffective) while providing a substitute rule." *Id.* In *Humana,* the Court clarified the concept of "impairment" under 15 U.S.C. § 1012(b) by stating:

> When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran–Ferguson Act does not preclude its application.

*Id.* at 310.

## B. The Opinion Misapplies the McCarran-Ferguson Act Test

The Bankruptcy Court was required to ascertain whether: "(1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance,

and (3) the federal statute would invalidate, impair or supersede the state statute."

*See In re PRS Ins. Grp., Inc.*, 294 B.R. 609, 612 (Bankr. D. Del. 2003) *aff'd*, 2005 WL 4121639 (D. Del. Mar. 31, 2005).

 The parties did not dispute that the Bankruptcy Code does not specifically relate to the business of insurance, or that the relevant Texas statutes were "enacted for the purpose of regulating the business of insurance." *In re Windhaven*, 636 B.R. at 602. The sole remaining issue for the Bankruptcy Court to consider was the preemption analysis under the third prong of the McCarran-Ferguson Act test—"whether the bankruptcy court's jurisdiction over the MGA Agreements invalidates, impairs, or supersedes state law"—such that the Bankruptcy Court might consider the issue raised by the Lift Stay Motion: "under the MGA Agreements, who is entitled to funds in the Premium Escrow Accounts held by the Debtors and the fund held by the non-party credit card processor in the name of the Debtors." *Id.*

 Rather than conduct the preemption analysis and consider whether such an exercise would "invalidate, impair, or supersede" the various Texas Insurance Code statutes cited by RRC, the Opinion simply rejects RRC's assertion:

> RRC asserts that this is a matter of the Texas Insurance Code; however, what the Court is tasked with interpreting is the MGA Agreements. The Texas Insurance Code does not govern all aspects of insurance companies but *only* the business of insurance.

*Id.* The Bankruptcy Court's analysis then turned to whether the dispute between the Trustee and RRC "pertains to the business of insurance." *See In re Windhaven,* 636 B.R. at 603. The Bankruptcy Court concluded that the funds dispute "does not go to the business of insurance, policyholders, or public interest," and that it was merely a contract dispute between two parties that did not implicate the McCarran-Ferguson Act. *Id.*

I agree with RRC that the Bankruptcy Court's focus on the nature of the dispute between the parties obfuscates the applicable test. The test is not whether a dispute between two parties relates to the business of insurance, but instead whether the applicable state statute was enacted for the purpose of regulating the business of insurance. Once the Bankruptcy Court (correctly) concluded that the Texas Insurance Code provisions—including the anti-setoff and claim priority provisions cited by RRC—regulated the business of insurance, the analysis should have instead turned to a preemption analysis, *i.e.*, whether there was any conflict between the Texas Insurance Code provisions and the Bankruptcy Code.

This is further illustrated by the Bankruptcy Court's extensive discussion of *Fabe* in holding that the Bankruptcy Code did not impair or supersede provisions of the Texas Insurance Code. *See In re Windhaven*, 636 B.R. at 602-03. *Fabe,* however, dealt exclusively with the second McCarran-Ferguson Act element— whether the underlying state insurance statute was enacted for the purpose of

16

regulating insurance—an element the Bankruptcy Court had already concluded was satisfied. *See Fabe*, 508 U.S. at 505-08. *Fabe* addressed the prong of the test that RRC and the Trustee did not dispute.

The Bankruptcy Court did not examine whether its determination "under the MGA Agreements, [as to] who is entitled to [the Disputed] funds" may invalidate, impair, or supersede the Texas Insurance Law provisions cited by RRC—including, but not limited to, Texas Insurance Code § 443.209's anti-setoff statute and § 443.301's claim priority statute. Indeed, RRC's main argument is that the parties' dispute is centered on the Trustee's alleged intention to collect a debt owed by WNIC by means of setoff, which, even if permitted under the MGA Agreements, may invalidate the Texas Insurance Code's anti-setoff provision applicable to fiduciaries. (*See* D.I. 10 at 1-3, 16-17, 24-25). Such a result, RRC argues, would also impair the Texas Insurance Code's priority scheme by prioritizing claims of general unsecured creditors like the Trustee over claims of policyholders. (*See id.* at 25-26, 37-38).

Courts—including this Court—have relied on a state law's priority scheme in concluding that reverse preemption is applicable. For example, in *In re PRS Insurance Group, Inc.*, both the Bankruptcy Court and this Court on appeal concluded that reverse preemption warranted dismissal of a preference action commenced by a bankruptcy trustee against an insolvent insurer in liquidation in

Delaware. *See In re PRS Ins. Grp.,* 294 B.R. at 612–13. Both Courts reached this conclusion because the trustee's affirmative attempt to recover funds would violate the priorities of the Ohio insurance liquidation statute. *See id.*

Accordingly, I turn to examine whether the Bankruptcy Court's exclusive jurisdiction to determine whether the Disputed Funds are property of the estate may invalidate, impair, or supersede the Texas Insurance Law provisions cited by RRC.[4]

### C.   The Bankruptcy Court's Exclusive Jurisdiction to Determine Whether Disputed Funds Are Property of the Estate Is Not Reverse Preempted by the McCarran-Ferguson Act

#### 1.   Texas Insurance Code §§ 443.005(c) and (d) – Jurisdictional Statute

RRC argues that a conflict between state and federal jurisdictional statutes constitutes grounds for reverse preemption under the McCarran-Ferguson Act:

> One conflict between the Bankruptcy Code and the Texas Insurance Code is that the Texas Insurance Code vests the Texas Court with exclusive jurisdiction over ***all property of the insurer***, wherever located. Tex. Ins. Code § 443.005(c) and (d). Conversely, the Bankruptcy Code vests jurisdiction in the Bankruptcy Court to litigate these matters. *See* 28 U.S.C. § 157.

---

[4] These issues were raised in the Bankruptcy Court, and affirmance is warranted on any basis that finds support in the record. *In re LMI Legacy Holdings, Inc.* 625 B.R. 268, 289-90 (D. Del. 2020) (citing *Geness v. Cox*, 902 F.3d 344, 356 (3d Cir. 2018)).

(D.I. 10 at 27) (emphasis added).  As the Trustee points out, 28 U.S.C. § 1334 is

the statutory basis for jurisdiction over the bankruptcy estate, while 28 U.S.C. §

157 authorizes district courts to refer bankruptcy proceedings, including "matters

concerning the administration of the estate," to the bankruptcy courts.  Under 28

U.S.C. § 1334(e)(1), the Bankruptcy Court has exclusive jurisdiction over property

of the bankruptcy estate:

> (e) The district court in which a case under title 11 is
> commenced or is pending *shall have exclusive*
> *jurisdiction*—
>
> (1) of all the property, wherever located, of the debtor as
> of the commencement of such case, and of property of
> the estate…

28 U.S.C. § 1334(e)(1) (emphasis added).  I agree the state and federal

jurisdictional statutes present no conflict: the Texas Court has jurisdiction over

property of the receivership estate, and the Bankruptcy Court has jurisdiction over

property of the bankruptcy estates.

Indeed, it is well-established that the federal courts' exclusive jurisdiction

under 28 U.S.C. § 1334(e) "includes jurisdiction to decide whether disputed

property is, in fact, property of the estate." *In re Washington Mut., Inc.*, 461 B.R.

200, 217 (Bankr. D. Del. 2011), *vacated in part*, 2012 WL 1563880 (Bankr. D.

Del. Feb. 24, 2012); *In re New Century Holdings, Inc.*, 387 B.R. 95, 105 (Bankr.

D. Del. 2008), *as amended* (June 17, 2008) ("[A] determination of what is property

of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction.") (quoting *In re Ascher*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991)); *In re Marathe*, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011) ("[T]he Bankruptcy Court has exclusive jurisdiction over property of the bankruptcy estate, and over disputes regarding whether specific property is property of the estate.") (citing *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010)).

In denying the Lift Stay Motion, the Bankruptcy Court cited this Court's *In re Patriot National, Inc.* decision for the proposition that the McCarran-Ferguson Act does not affect the jurisdictional analysis, and "the federal court retains jurisdiction to determine of [sic] the rights to the Disputed Funds, even if the Disputed Funds never become property of the Debtors' estates." *Windhaven Top Ins. Holdings, LLC*, 636 B.R. at 604; *see also Patriot Nat'l, Inc.*, 623 B.R. at 709 ("Case law is clear that the McCarran-Ferguson Act does not deprive a federal court of its valid jurisdiction, and that 'a federal court's determination of rights to that property, without more, does not invalidate, impair or supersede state insurance law . . .'") (quoting *In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 151 (Bankr. S.D.N.Y. 2015)).

While RRC is able to cite a few cases[5] that are inconsistent with the

Bankruptcy Court's decision, these decisions are from outside the Third Circuit.

The Bankruptcy Court's decision is consistent with "a long line of cases hold[ing]

that a bankruptcy court's retention of and potential exercise of, exclusive

jurisdiction over determinations related to property of the estate does not support

reverse preemption under the McCarran-Ferguson Act." *In re Patriot Nat'l, Inc.,*

623 B.R. at 709-10 (citing *Ames,* 542 B.R. at 151); *In re Agway, Inc.,* 357 B.R.

195, 203-04 (Bankr. N.D.N.Y. 2006); *In re PRS Ins. Grp., Inc.,* 331 B.R. 580, 588

(Bankr. D. Del. 2005); *In re Frontier Ins. Grp., LLC,* 517 B.R. 496, 506 (Bankr.

S.D.N.Y. 2014)); *In re First Assured Warranty Corp.,* 383 B.R. 502, 541 n.38

(Bankr. D. Colo. 2008) (rejecting reasoning of *Advanced Cellular* and *Amwest,* and

holding that "[t]he fact that a federal action may have a financial impact on the

assets of the insolvent insurer's estate does not necessarily indicate a state's

liquidation proceeding is 'impaired.'").

_____

[5] *See* D.I. 10 at 19, 23 (citing *In re Med. Care Mgmt. Co.,* 361 B.R. 863, 866
(Bankr. M.D. Tenn. 2003) (reverse preemption under the McCarran-Ferguson Act
constituted grounds for relief from the automatic stay to allow commissioner of
insurance to continue pre-petition avoidance action against the debtor)); *id.* at 35-
36 (citing *Advanced Cellular Systems, Inc. v. Mayol,* 235 B.R. 713 (Bankr. D. P.R.
1999) (turnover action in bankruptcy court impaired or impeded grant of exclusive
jurisdiction over insurance liquidation to state court); *Wagner v. Amwest Ins.
Group (In re Amwest Ins. Group),* 285 B.R. 447 (Bankr. C.D. Cal. 2002)
(McCarran-Ferguson Act reverse-preemption barred bankruptcy court from
interpreting tax allocation agreement to determine ownership of tax refund*).*

RRC further argues that the Bankruptcy Court's reliance on *In re Patriot National, Inc.* was misplaced because the Trustee is seeking something more than a determination of what is and is not property of the bankruptcy estates. According to RRC:

> The Bankruptcy Court will not simply be asked to make a determination of whether the disputed funds constitute property of the bankruptcy estate. [RRC] respectfully submits that question is without reasonable dispute. The funds are collected premiums, funds which are held in trust for the benefit of WNIC under the terms of the MGA Agreements and the Texas Insurance Code. The funds are – indisputably – property of the WNIC estate. The trustee has a claim against the WNIC estate for unpaid pre-petition commissions. That fact is also not really in dispute. The gravamen of the dispute between the parties is whether the trustee can recover on account of his claim against the funds he presently holds in trust for the benefit of WNIC. In other words, what needs to be adjudicated is the trustee's affirmative claim for recovery of commissions owed to the MGAs and the disposition of the funds which are, at present, receivership property.

(D.I. 10 at 32-33). RRC appears not so much concerned with demonstrating that federal jurisdictional statute would invalidate, impair, or supersede the Texas jurisdictional statute; rather, RRC is concerned that there is no federal jurisdiction at all, because "[a]ll of the subject funds are property of the WNIC estate." *Id.* I disagree. There is a genuine dispute regarding ownership of the disputed funds, and the Bankruptcy Court has exclusive jurisdiction to determine whether those disputed funds are property of the estate.

I conclude that Texas Insurance Code § 443.005(c) and (d) are not invalidated, impaired, or superseded by the Bankruptcy Court's exercise of its exclusive jurisdiction to determine whether the Disputed Funds are property of the Debtors' estates.[6]

### 2.   Texas Insurance Code § 443.209 – Anti-Setoff Statute

According to RRC, "the Bankruptcy Court simply ignored that the very essence of the dispute between the parties centers around Texas Insurance Code § 443.209," which governs rights of setoff in Texas insurance liquidation proceedings. (D.I. 10 at 24). Section 443.209 provides, in relevant part, that "[a] setoff may not be allowed in favor of any person if . . . the obligation of the person is as a trustee or a fiduciary . . . " Tex. Ins. Code § 443.209. The Texas Insurance Code does not define "setoff," but does include the term within its definition of "transfer." Tex. Ins. Code § 443.004. "Setoff is a contractual or equitable right that 'allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.' "

---

[6] Because the present dispute did not involve property of the receivership estate or actions against WNIC itself, RRC's arguments regarding the automatic stay and state court injunctions are also misplaced. (*See* D.I. 10 at 8 (citing TRO prohibiting various actions "against Defendant [WNIC] or Defendant's Property."); *id.* at 9 (citing Tex. Ins. Code § 443.008, which imposes stay of "actions against WNIC" and "actions against WNIC's property"); *id.* (citing Liquidation Order, vesting RRC "with title to all of [WNIC's] property…")).

*In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 14 (Bankr. D. Del. 2018) (quoting

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995)) (internal citation

and quotation marks omitted).  In other words, the effect of a setoff is to reduce the

amount of an otherwise legally enforceable debt by an amount equal to another

legally enforceable debt.

The Trustee argues that he is not attempting to reduce the amount of any

lawful debt owing to WNIC, and is therefore not asserting a right of setoff.

According to Trustee, under the terms of the MGA Agreements, the MGAs

collected premiums on WNIC policies, and were obligated to "remit the balance of

the accounts (premium minus commissions, losses and loss adjustment expenses),

plus fronting fees and premium taxes . . ." to WNIC on a periodic basis.  (MGA

Agreement, §5.2, Appendix, A050 and A074).  The MGA Agreements provide that

WNIC was only entitled to premiums net of commissions, and the Trustee argues

this net amount was therefore the "debt" that was owed to WNIC.

RRC disagrees with the Trustee's characterization, arguing that the dispute

indeed concerns the Trustee's asserted right of setoff—as expressly noted in the

Opinion. *In re Windhaven*, 636 B.R. at 601 ("The Trustee, however, asserts a right

of setoff and refuses to turn the Disputed Funds over to the RRC.")

RRC's substantive argument is well taken.  The primary dispute between the

Trustee and RRC is whether the Trustee can recover on account of his claim by

24

setting off against the escrow funds he holds, or whether all of the funds must be turned over to WNIC for distribution to all creditors in accordance with the Texas Insurance Code's priority scheme. While the Texas Insurance Code generally permits a person to setoff debits and credits against an insurer in liquidation, it forbids setoff if the funds are held in a fiduciary capacity. (A026-27; Tex. Ins. Code § 443.209). Any resolution of the parties' disputes must include consideration of § 443.209, as the statute may be "dispositive, insofar as it overrides the pre-liquidation contractual right of setoff" on which the Trustee's position relies. (D.I. 10 at 2).

RRC's substantive argument, however, is not before the Court, and the Bankruptcy Court's exclusive jurisdiction to determine whether the Disputed Funds constitute property of the estate does not itself invalidate, impair, or supersede the anti-setoff provision. Rather, the Bankruptcy Court is well-positioned to make a determination as to whether the Disputed Funds are property of the Debtors' estates based on its interpretation of the MGA Agreements as well as the requirements of the Texas Insurance Code. *See Lawski v. Frontier Insurance Group, LLC (In re Frontier Insurance Group, LLC)*, 517 B.R. 496, 506 (Bankr. S.D.N.Y. 2014) ("a federal court's ordinary determination of property rights, interpretation of contracts, *or interpretation of state statutes* does not 'impair' state law, even when a federal court's decision has a financial impact on

the insolvent insurer's estate.") (quoting *In re First Assured Warranty Corp.*, 383
B.R. at 541); *see also In re Ames Dep't Stores, Inc.*, 542 B.R. at 150 n.126 (same).
The Opinion itself states as much. *See In re Windhaven*, 636 B.R. at 604 ("As a
result, this Court is not reverse pre-empted from determining whether the Disputed
Funds are part of the estate, because at its base the Court will be interpreting the
MGA Agreements (even though various provisions of the MGA Agreements are
mandated by the Texas Insurance Code).").

I conclude therefore that Texas Insurance Code § 443.209 is not invalidated,
impaired, or superseded by the Bankruptcy Court's exercise of its exclusive
jurisdiction to determine property of the Debtors' estates.

### 3.    Texas Insurance Code § 443.301 – Claim Priority Statute

RRC also points to Texas Insurance Code § 443.301, the statute that
establishes the priorities afforded different types of claims in Texas insurance
liquidation proceedings, as grounds for reverse preemption.  (D.I. 10 at 25-26).
The Texas Insurance Code's priority scheme prioritizes claims of policyholders
over claims of general unsecured creditors (like the Trustee).  Allowing the Trustee
to effect a setoff to collect on his claim, RRC argues, "would run contrary to the
Texas Insurance Code's priority scheme."  (*Id.* at 26).

I agree that permitting an improper setoff has the potential to affect how
receivership property is administered and could upset the priority scheme set forth

in the Texas Insurance Code. But as discussed above, the exercise of the

Bankruptcy Court's exclusive jurisdiction to determine whether the Disputed

Funds constitute property of the estate does not itself invalidate, impair, or

supersede the anti-setoff provision, and the Bankruptcy Court is well positioned to

interpret and apply the Texas Insurance Code in making that determination. If no

improper setoff is permitted, the Texas Insurance Code's priority scheme remains

unaffected.

## VI.   CONCLUSION

In sum, the only substantive dispute is whether the Disputed Funds are

property of the Debtors' estates—a substantive dispute that is not at issue in this

appeal. The issue on appeal is whether the Bankruptcy Court correctly held that

there were no grounds for reverse preemption under the McCarran-Ferguson Act.

The Texas statutes related to jurisdiction, setoff, and priorities of claims do not

conflict with the Texas Insurance Code. Because the Bankruptcy Court correctly

analyzed the applicability of the McCarran-Ferguson Act, it also correctly

determined that RRC had failed to establish cause for relief from the automatic

stay.[7]

---

[7] According to RRC, "[t]he sole issue on appeal is whether the Bankruptcy Court
erred by concluding that the [McCarran-Ferguson Act] was not implicated by the
disputes between the parties." (D.I. 10 at 4). As RRC does not allege any other
errors, it appears that RRC concedes that, absent reverse preemption under the

The Court will issue a separate Order consistent with this Opinion.

---

McCarran-Ferguson Act, there was no error in the Bankruptcy Court's refusal to grant relief from the automatic stay.